Our final case this morning is MINKIN v. GIBBONS. Mr. Collins. Good morning, Your Honors. I will endeavor to please the Court. This case concerns a patent which provided no meaningful protection to the invention which is its subject. And we are here concerned with the question of whether the defendant law firm could have and should have drawn a patent that would have provided such meaningful protection. The district court dismissed the case on summary judgment. Plaintiff had proposed to prove his case by providing hypothetical patent claims, distinguishing those claims from the prior art. The district court held that because plaintiff's expert did not opine that those hypothetical claims would not be subject to rejection by the Patent and Trademark Office on grounds of obviousness, that the necessary requirements for plaintiff to get past summary judgment were not met. The claims that you're talking about, these are hypothetical claims? Correct. So we're not talking about the claims under the patent? We are not talking about the claims. Explain to me how this court has jurisdiction. How does the court have jurisdiction? To hear this case. If we don't have a live patent, if we're dealing only with hypotheticals, explain to me how this is a federal patent law question. Your Honor, because the subject matter of the underlying case was deemed to be patent law, there seems to be a broad consensus that those matters fall within the jurisdiction of the district court. This case was filed by plaintiffs in state court, was removed to federal court by defendant, predicated upon the assertion that patent law was sufficiently involved as to warrant the expertise of the district court. And the issues that have been put forward deal with hypothetical issues. They also deal with patent law, and it is because they're dealing with patent law. Well, they're related to patent law, but the issues are hypothetical. You're certainly correct, Your Honor, and as I said, it was not plaintiff's choice to have the case in federal court. The removal was sought by defendant, and it seems to be sustainable. A law professor could answer hypothetical issues. The easy answer is because the federal circuit has said three times now that in this setting it has jurisdiction, right? That would be the easy answer. And so the only way this court could reconsider that would be to go on bonk, right? Well, if I understood Judge Rainer's question, I thought possibly he was distinguishing this case from others in which… Let's say that the cases that Judge Rainer has referenced to, they deal with live issues of a live patent or questions dealing with claims of a patent. Well, yes and no. I believe, although we're focused today in our discussion on the Davis case, which involved one actual patent filing, albeit one that was permitted to expire, and a couple of missed deadlines, I'm not able to cite to the court a case per se at this moment since we weren't really focused on the jurisdictional issue. But I do believe that you have dealt with missed deadline cases, and missed deadline cases are essentially hypothetical claims that have never been passed upon by PTO. So I think you get to about the same place. This has been a question that, when raised in the various courts that have dealt with it, seems to have been uniformly decided in favor of federal jurisdiction over the resistance of plaintiffs who have intended to prefer state court, as the plaintiff in this instance initially filed in state court. I hadn't appreciated the court considered the jurisdictional issue to be live at this point, post Davis and the other authorities that have come before it. Okay. You've answered my question. Now, it's plaintiff's position that the court in Davis said enough about the requirements of an expert's report for summary judgment purposes to provide guidance to the bar and to the district court to enable it to know what the necessary things that are required to be included in a situation like this are. And what the court said there was that you have to discuss, or the expert has to discuss the prior art references and their effect on the patentability of the claim here, the hypothetical claim. Without question, that occurred. And there really is no case to be made that there was not a thorough discussion of 16— But doesn't the case-within-a-case doctrine require you to establish that, but for the negligence, a patent would have issued that would cover these claims? The issue—well, I think that when we're using case-within-a-case analysis, we have to go step-by-step. Case-within-a-case analysis would put the plaintiff in the shoes of the applicant before PTO. And the applicant before PTO in the first instance is not required to make a case for non-obviousness to PTO. PTO has the burden of establishing obviousness. That might be how it works in the PTO, but where the negligence that you say occurred here was in connection with real-life back-and-forth with the PTO, and you're saying if we had different claims in that real-life back-and-forth, those claims would have survived. Don't you have to at least address the art that the PTO cited as a basis for rejection? Your Honor, it's addressed in the 37-page supplemental report in which the 16 prior art references are all distinguished from the hypothetical claims. On anticipation grounds. Now, I have a couple of other things to say about what the obviousness proofs issue would entail in this instance. First, since we're using case-within-a-case, I posit to the court the following. We have an actual prosecution history here. This is not a missed deadline case. We know what happened, and we know that the examiner included obviousness as a bar to the issuance of the patent up to the point when she actually handled the device. It is not the question for case-within-a-case purposes whether the wording of the claim that Plaintiff advances here, the hypothetical claim, if included in the initial application, would have given rise to a different result, that when the examiner actually handled the device, she would have, because of the differing claims language, sustained the obviousness objection that was overcome when that happened. I submit to the court that this is highly relevant in the case-within-a-case analysis. Why didn't you have your expert? Why didn't you have Mr. Gerhard talk about that? I mean, he was pretty snippy. Mr. Gerhard wasn't there. I mean, that was something that Plaintiff stated in his affidavit he testified to in his deposition and was included in the factual milieu. Is that something that Mr. Gerhard was in a position as an expert in patent drafting to know? I don't think that anything other than common sense and our human experience tells us that if the patent examiner was sufficiently impressed with the device, under the circumstances here presented, that she probably would have been sufficiently impressed with it if the hypothetical claims had been included in the original application or here in the amendment. Now, another point that I think bears a lot of emphasis here— is to how the prosecution process works. If there had been a different claim, of course, then the examiner would have had to compare that new language to each of the pieces of prior art. There would have had to have been some examination of the differences and of whether or not there was any motivation to combine various references to reach that conclusion. There would have had to have been findings about the level of skill in the art and the ability of one of skill in the art to foresee the combinations of prior art that may have produced this new issue. That issue was never presented to the examiner, so we do have to have some kind of insight with someone who has knowledge of the prior art and the level of skill in the art how there would have been a motivation to either reach or not reach the claimed invention. By the way, all of that is, of course, incredibly intense patent law. But there's nothing in the record that shows us that this kind of analysis occurred at any point. We only hear that, well, that wasn't in the prior art. That's anticipation. Even that, by the way, takes a little bit more analysis than we received. Okay, and what you said, I don't disagree with its fairness, and your analysis is certainly cogent, but there are a lot of different ways in which the procedural posture of this case might be viewed. Now, we're here on summary judgment. The question that's presented, essentially, is what did we need to do to get past that initial bar? And I suggest to the court that— Don't you have to present some evidence on obviousness to get by that bar? Is not anticipation itself— You didn't create an issue of fact if you didn't present any evidence. Okay, I have a lot to say about that, Your Honor. Please. I'd like to just say a couple of words about the doctrine of equivalence as a procedural matter and whether or not that model is a suitable one to employ in connection with the hypothetical claims analysis here. In Wilson and Streamfeeder, the court has employed an analysis that says that the proponent of the hypothetical claim, who is the holder of the patent, must, in the first instance, make a case as to why the hypothetical claim would not be subject to various bars, including obviousness, and is required to respond to the challenger. And I submit to the court that in the context of the hypothetical patent, that model is ideal for this setting. The court just suggested to me, Your Honor, that we had to do something. The hypothetical analysis you're talking about is an infringement analysis. We're talking about the validity analysis, which is an entirely different set of law. Well, I don't think that's entirely correct because it would be the validity analysis of the hypothetical claim on top of the actually patented claims. So you're really going through a somewhat similar thing in that respect. But to address what you just said about there has to be something, could we have gotten past it if we were to say, and it's our opinion that there wouldn't be an obviousness bar. Obviously, that wouldn't be quite enough. If we were to take a couple of combinations of the 16 prior art references and say, if we combined, you know, A1 and B2 or C3 and D4, and those would not be subject to obviousness, so it's okay. Is there a limit to the point at which we could say in the first instance without having been told by defendant, just as the applicant for the patent is told by PTO, this is your obviousness problem? Do we have to anticipate everything that might be said, every possible combination of components of prior art? Before the motions for summary judgment, did you propose a case structure like this to the district court? We did not. And, Your Honor, this is relatively uncharted territory here, I submit. We don't have a lot to work with by way of prior law. I'll confess that the analysis, the stream feeder analysis is something that we were not aware of at the time that we were presenting this. But I submit also that all of this is important in considering what the allocation of burden is. Another point that I think needs to be referenced here when we're talking about this particular issue is that the district court, if you read its opinion, it seems as though it's not until about page 12 or 13 that the judge even notices that the supplemental report is there and that there has been a sufficient discussion of the distinction of the prior art. Throughout the bottom of page 11 of the district court's opinion, the judge states that plaintiff's expert has not addressed the prior art at all in any fashion, when in fact he has. And later in the opinion, there is a concession that there has been some discussion. There seems to have not been a perfect focus on the part of the district court with respect to what the appropriate procedural mechanism to deal with this situation is. So to state it simply, we think that Davis speaks sufficiently well to the expert proofs requirements. We think the case within a case requires that in the first instance the plaintiff only be required to do what the applicant before PTO would do for summary judgment purposes, at least at the first throw. We maintain that the doctrine of equivalence presents an adequate model for consideration of whether or not hypothetical claims should be subject to the obvious bar. And we submit that it is simply impractical to say to a plaintiff in the first instance that you've got to prove the negative of non-obviousness, as opposed to demonstrating that a claim of obviousness can be defeated. Don't you have to at least raise a question of material fact? We have to, of course, raise a question of material fact on a motion of summary judgment. There's no question about that. But I think in the first instance— Doesn't that require at least some evidence? How can we know what they're going to say concerning obviousness until we've seen it? Once you get a fact question presented, then of course we're out of the summary judgment area. But you have to get us past the amount of evidence to at least raise facts, don't you? Well, Your Honor, you're really talking about a combination of fact and law when you talk about the obviousness question. You clearly are. I'm considering whether I want to save a minute, and I think I will. Oh, no. Well, we'll give you a little extra time. Oh, thanks. Go ahead. You know, we have a situation here with the way practice is conducted in the district court where the plaintiff's got a deadline by which it's got to submit its expert proofs. It's cut off at that point. The defendant then has a period of time. There is not, under the ordinary case management in the district court, a period during which the plaintiff now has a rebuttal. In the ordinary case, maybe that should be the case here in order to facilitate that. My provision of expert proof was defined and limited at the time that my discovery period concluded and my experts' reports were finally submitted. I didn't have the opportunity to say, okay, they've shown me their obviousness now. I'll have my expert opine on that. So what we're called upon to do in this setting is anticipate the really unanticipatable case that is going to be made for obviousness, and it simply is unfair. Okay? Give me a minute later. I appreciate it. Thank you. No, Mr. Collins, we'll give you your whole rebuttal time. Two extra minutes back, and if you'd give Mr. Long an extra two minutes if he needs to use it, we'll have an equal time. Thank you, Chief Justice Ray. You may proceed. May it please the court. The underlying patent examination was characterized by the kinds of issues and tensions and dynamics that you would expect to see where an applicant proposes to patent an invention in a very crowded field of prior art. The examiner struggled with the prior art and the various iterations of claims that Gibbons submitted. In the first instance, she applied anticipation from the Brindos reference to one of the claims. It was pretty strange, though, that all of a sudden she just dropped her objection. I mean, she rejected on obviousness grounds and then all of a sudden granted the patent. I don't think that's what she did, and in fairness, the record shows that Gibbons submitted two years before that in-person interview a CIP application that, again, revamped and narrowed the claims. Four declarations, one from the inventor, from his perspective in the mechanical arts, from another mechanic. But then there was a rejection after that. No, there wasn't. No, Your Honor. The CIP and the declarations were pending at the time of the in-person interview. In fact, that interview was requested by Gibbons because of the two years of inaction on what they thought was a pretty good-looking application, given the narrowness of the CIP and the additional materials addressing the secondary considerations of non-obviousness. And did your client ever explain to the inventor that they were drafting the patent so narrowly that it didn't even cover the prototype? I don't know what they explained to him, Your Honor. It wasn't an issue in the case. The attorney who did the drafting is no longer with Gibbons, and it was difficult to go back and revisit recollections of that. There's no written record of, Dear Mr. Minkin, you're likely to receive a patent that isn't going to… But the attorney who did the drafting wasn't even ever with Gibbons, right? Oh, no, he was. Mr. Hodulik took it over. The initial application was prepared by the contract attorney. Right. He farmed it out. Initially. Without telling his client. The work was brought in and supervised by the Gibbons partner and Mr. Hodulik, and then Mr. Hodulik picked up the drafting from that point on. But the drafting was done by someone who never met with the client and who never even saw the prototype, correct? I don't know whether he saw the prototype. He had the Minkin drawing. I believe he had the initial drawing that Mr. Minkin did. You're a lawyer. How do you explain to a client that that's how you deal with them as you're taking their money to draft a patent application? The expectations of the individual inventor are a management issue for any patent attorney. How does a doctor tell someone with a terminal illness, look, I can treat you. We may extend your life, but you're going to die from this disease, and you're going to die from this disease in six to eight months. It's a difficult discussion, and it's a professional matter that has to be finessed at the lawyer level. So you're saying that you have to finesse saying to the client, we're going to draft a patent, but anybody can design around it without even much thought? I don't think there's a way to finesse that rule. I think Mr. Minkin wanted a patent, was adamant about that, and indeed went out and made a fair deal of money with the 363 patent. Kind of following on what Judge O'Malley said, it's pretty axiomatic in patent law that when you put in a numerical equation, this is going to be three times the length of that, that that sort of limitation is easily evaded. It's kind of patent law 101 that you avoid that kind of specific numerical limitation, because it's so easy to circumvent. Does that alone justify kind of a malpractice? No one has said that it does, and there's no evidence in this case that that is the case. Your Honor, this is a pair of pliers. But I think if I took this and showed it to 50 of my patent law friends, 45 of them would say, I'd never do that. It may not have been a preferable approach with most inventions, but as I've said, this is a pair of pliers. It had two pivot points. The prior art is full of that type of invention, and the only way to draft around it is to go to those kinds of ratios. And in fact, objection was drawn in the initial rounds that this was simply design obviousness. I'm not sure I have the terminology. But it was one that had commercial success because it served a different function. It served a different purpose. It was creative. You're not arguing it wasn't novel, are you? The 363 patent issued. I mean, I think that issue rests there. And there's a pretty good market demand for it. It seems like it worked pretty well. There is. And Danaher liked it so much they went out and practiced the prior art and made some money off of it as well and cut into the plaintiff's sales. There's no evidence from the plaintiff that they weren't practicing the prior art. There's no evidence from the plaintiff that Gearhart's claims covered the Danaher tool. That is an undisputed fact. It's in our statement of uncontested material facts. I think it's number 21. I can get the reference to the record if you wish. Well, he said that they did. He didn't supply any background information, but he said that it did. And those hypothetical claims were fairly broad. No, he said his sample reports, there's no evidence in the record from Mr. Gearhart or anybody else that the samples covered the Danaher tool. And that is an undisputed fact. It's our statement of material facts, not in dispute number 19. It appears at around Appendix 84, 85, 86. That stipulated fact alone is dispositive of this case, and the district court gave it very short shrift. Now, Mr. Long, when you look at Mr. Gearhart's affidavit, he's dealing with each piece of prior art, and he's dealing in specificity with the claim elements and writing sample claims. Although he never does reach obviousness as a separate issue, he's done an analysis that allows you to see that there would have been or would not have been a case of obviousness. Can we see an issue of fact even though it's not been presented to us? No, there is no issue of fact, and there cannot be an issue of fact because of the opinions that Mr. Gearhart gave and the testimony that he gave. He said, I did not consider obviousness. He testified, I have no opinion on obviousness or non-obviousness. But he's dealing so specifically with the claims and the alternatives that couldn't the well-informed court say, well, I can see that obviousness would or would not have been precluded in this instance? Well, if Your Honor is suggesting that he goes first with a little bit of evidence and then maybe we should come back in the role of the examiner and raise obviousness and then we go into another round of it, I don't think that's the way to go. There has to be a line drawn at some point procedurally. Rule 26? You'd have to have some evidence of motivation to combine, some evidence of skill in the art, some evidence that was not there. And Gearhart says it's not coming from me and it cannot come from him. And I think that disposes of the case. I've got loads of time. If the court has questions, I'd be happy to address them. Thank you. All right. Thank you. Mr. Long, please. First, I'd like to quote from a line in the Supreme Court's decision in KSR concerning obviousness. Rejections on obviousness grounds cannot be sustained by mere conclusory statements. Instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness. This is the point that I seek to emphasize. To say that that criterion is not met is to prove a negative, which simply is not the burden properly assigned to plaintiff in the first instance. The other point that I think bears some emphasis here is that in analyzing the Gearhart opinion, there is so much overlapping between the concepts of anticipation and obviousness. To say you distinguish every instance of the prior art from the sample claims and to follow it by saying there has been no discussion of obviousness is to ignore the obvious. I shouldn't use the word obvious, but to ignore what is plain. But even if we were to agree with you in sort of theoretical, in the abstract, when you have an actual prosecution history here where there was specific prior art that was cited not just for anticipation, but when the examiner actually combined various pieces of prior art, why wouldn't it be the plaintiff's burden to actually look at those pieces of prior art, even if you don't have to cover the world? They were all looked at. While the prior art was examined by Gearhart, that's not really an issue. The question is simply whether Gearhart's failure to say, it is my opinion that no combination of the prior art would have given rise to an obviousness bar was a necessary element of extra proofs for summary judgment purposes. There hasn't been any absence of discussion or analysis. It simply has been that every conceivable permutation hasn't been. Would you agree that the examiner in the initial prosecution put pieces of prior art together like you would? It's a different claim. Pardon me? It was a different claim. Here we're talking about hypothetical claims that are distinguishable from those. And that is where I think the important distinction is drawn. We're not talking about what happened with those prior claims. But they're distinguishable because they're broader, not narrower. Well, I do know that the examiner ultimately found the obviousness objection to be overcome following two years of inaction and the actual handling of the tool with no further material included in the record. For the extraordinary narrow claims that don't buy much. That is true. Is that something we should ignore in case within a case? I submit not. Thank you. Thank you, Mr. Collins. That concludes our morning. All rise. Thank you.